# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.L. and J.R. Jr., individually and as guardians of J.R. III, an incapacitated person, | : : : : | Civil No. 3:19-cv-0670 |
| Plaintiffs, | : : : | |
| v. | : : | |
| SCRANTON SCHOOL DISTRICT, | : : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendant Scranton School District's Rule 12(b)(1) motion to dismiss. (Doc. 4.) Defendant argues that the gravamen of Plaintiffs' complaint concerns the right to a free appropriate public education requiring exhaustion of administrative remedies under the Individuals with Disabilities Education Act. Applying the standard established by the Supreme Court in *Fry v. Napolean Community Schools*, this court finds that the gravamen of Plaintiffs' complaint is intentional discrimination based on allegedly intentional and/or deliberate indifference toward Plaintiff J.R. III's disability. As such, administrative exhaustion is unnecessary. Accordingly, for the reasons that follow, the court will deny the motion. (Doc. 4.)

## Factual Background and Procedural History

Plaintiffs K.L. ("Plaintiff K.L.") and J.R. Jr. ("Plaintiff J.R."), individually and as guardians of their child, J.R. III, ("Plaintiff Student") an incapacitated person (collectively, "Plaintiffs"), initiated this action via complaint on April 18, 2019, against Defendant Scranton School District ("District"). (Doc. 1.) The complaint sets forth two causes of action: Count I for discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and Count II for Pennsylvania common law negligence.[1] (*Id.*)

The following facts are gleaned from Plaintiffs' complaint and are taken as true for the purpose of ruling on the District's motion to dismiss. Plaintiff Student is eligible for special education services as he is a handicapped person with impairments that substantially limit his life activities. (*Id.* at ¶¶ 26–27.) He began attending the Monticello School within the District during the 2016–2017 school year. (*Id.* ¶ 28.) On or about October 25, 2018, Plaintiff Student's grandmother, Eleanore Gaffney ("Ms. Gaffney"), arrived at the Monticello School for dismissal pickup. (*Id.* ¶ 30.) During this pickup, Ms. Gaffney witnessed a school aid ("the school aid"), who was a District employee, violently grab and forcefully push

---

[1] Plaintiffs also demand attorney's fees in Count III in the event they are successful on Count I. (Doc. 1, ¶¶ 68–71.)

Plaintiff Student into a straight-backed office chair pinning Plaintiff Student's upper body and head to restrain him. (*Id.* ¶ 31.) In restraining Plaintiff Student, the school aid yelled, "Are we done yet? Are you done?" or other similar language while Plaintiff Student cried and screamed in pain. (*Id.* ¶ 32.) As a result of this incident, it was discovered that Plaintiff Student had sustained severe bruising and contusions on his head and neck. (*Id.* ¶ 33.)

On October 26, 2018, Plaintiff K.L. told Dennis Engles, Director of the Monticello School, that she did not want the school aid to have any further contact with Plaintiff Student and requested a meeting to discuss the October 25, 2018 incident. (*Id.* ¶¶ 34.) In mid-January 2019, Plaintiffs K.L. and J.R. met with several representatives of the District at the Monticello School including, Dennis Engles; Sharon Battick, the District's Director of Special Education; Cathy Opshinksi; Deborah Demming; and Ashley Richards. (*Id.* ¶ 35.) The October 25, 2018 incident was discussed at length, and Plaintiffs K.L. and J.R. were told that the school aid would have no further contact in any manner with Plaintiff Student going forward. (*Id.* ¶ 36.) The District also promised to contact Plaintiffs K.L. and J.R. if any specific issue arose with Plaintiff Student that would involve some type of physical restraint. (*Id.* ¶ 37.)

Subsequent to the meeting, on February 14, 2019, Ms. Gaffney arrived at the Monticello School around 2:30 p.m. to pick up Plaintiff Student and was informed

by a District representative that "[Plaintiff Student] had a behavior and is in the safe room now." (*Id.* ¶ 38–39.) Ms. Gaffney was escorted to the safe room where she found Plaintiff Student sitting on the floor with his coat also on the floor next to him, leaning forward, crying, and holding his right arm with his left hand. (*Id.* ¶ 40.) Ms. Gaffney informed Ashley Richards and the school nurse that Plaintiff Student's right arm was injured, but was told that "there was nothing wrong with his arms," and that his "blood pressure was fine." (*Id.* ¶ 41.) That same day, Plaintiff Student was taken to the emergency room at Geisinger–CMC where he was diagnosed with a dislocated right shoulder. (*Id.* ¶ 42.) Following the February 14, 2019 incident, Plaintiff K.L. viewed surveillance video of the incident which showed the school aid violently and aggressively attempting to restrain Plaintiff Student by holding his right arm and forcibly moving it upward behind his back while simultaneously pushing Plaintiff Student up against a desk. (*Id.* ¶ 43.)

On May 14, 2019, the District filed the present motion to dismiss Plaintiffs' complaint, along with a supporting brief. (Docs. 4–5.) Plaintiffs filed a brief in opposition on May 28, 2019. (Doc. 6.) This motion is now fully briefed and ripe for disposition.

## JURISDICTION

Because this case raises federal questions under the ADA and Section 504, the court has original jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental

4

jurisdiction over the state law claim under 28 U.S.C. § 1367(a).  Further, venue is appropriate as all the actions detailed in the complaint occurred within the Middle District of Pennsylvania.

**STANDARD OF REVIEW**

The District seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.  The court, in determining whether it has subject-matter jurisdiction, must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)).  Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.) Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will

not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, the District challenges Plaintiffs' alleged failure to exhaust administrate remedies and, thus, presents a factual attack on subject-matter jurisdiction. *See Rohrbaugh by & through Rohrbaugh v. Lincoln Intermediate Unit*, 255 F. Supp. 3d 589, 592 (M.D. Pa. 2017). As a result, the court will weigh the allegations in the complaint without presuming truthfulness in order to determine the merits of the jurisdictional claim.

## DISCUSSION

On the face of the complaint, this action seeks compensatory damages and attorney's fees under the ADA, Section 504, and Pennsylvania law. (Doc. 1, ¶ 1.) Nonetheless, the District argues that the gravamen of Plaintiffs' complaint concerns Plaintiff Student's right to a free appropriate public education ("FAPE"). Therefore, the District contends that Plaintiffs were required to exhaust their administrative remedies prior to suing in federal court. (Doc. 5, pp. 5–7.) Plaintiffs, in contrast, submit that they were not required to exhaust administrative remedies because the complaint details intentional discrimination and negligence claims, not a denial of Plaintiff Student's right to a FAPE.

6

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, ensures that all children with disabilities receive a FAPE. Section 1415(l) of the IDEA provides that "[n]othing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act, or other Federal laws." 20 U.S.C. § 1415(l). However, this section also requires a person to first exhaust the IDEA's administrative procedures before suing under the ADA or Section 504. *Id.* The Supreme Court addressed the question before this court in *Fry v. Napolean Community Schools*, 137 S. Ct. 743 (2017). There, the Court held that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the [IDEA] calls a 'free appropriate public education.'" *Id.* at 748. The examination of a plaintiff's complaint should "consider substance, not surface." *Id.* at 755. Whether a complaint uses particular terms or labels, such as FAPE or Individual Education Plan ("IEP"), is not material. *Id.* Rather, Section 1415(l) "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.*

The Supreme Court stated that two hypothetical questions are instructive for determining whether the gravamen of the complaint concerns the denial of a FAPE or a disability-based discrimination claim:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or child in some other) has a viable claim.

*Id.* at 756.

The Supreme Court illustrated a situation that is instructive in this case: a teacher, "acting out of animus or frustration, strikes a student with a disability." *Id.* at 756 n.9. While a lawsuit under a statute other than the IDEA could relate to the student's education, "the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion." *Id.* In that situation, a child or adult could file the same type of suit if the action took place in a different public facility. *Id.*

Concerning the specific illustrative scenario provided by the Supreme Court in *Fry*, some courts have held that claims involving physical harm to students in the classroom disciplinary context implicate a denial of a FAPE requiring exhaustion of administrative remedies. *See Rohrbaugh*, 255 F. Supp. at 595–597 (holding that the gravamen of the complaint alleging injuries sustained from the use of a restraint by an aid was a denial of a FAPE requiring exhaustion of

8

administrative remedies); *see also P.G. by & through R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 902–903 (M.D. Tenn. 2018) (collecting cases). However, other courts, such as the Middle District of Tennessee in *P.G. by & through P.G. v. Rutherford County Board of Education*, have focused on the fact that "allegations are not tied to [plaintiff's] individualized education plan, classroom discipline, or enforcement of school special education policies in any way. Rather, they are bare allegations of violence (attributed to discrimination) . . . untethered from the core of [plaintiff's] education program." 313 F. Supp. 3d at 903–904 (collecting cases holding that the physical harm allegations were beyond the scope of a denial of a FAPE, thus, exhaustion was not required). The court in *P.G.* concluded that the allegations of "rough handling, scratching or choking [plaintiff's] neck" were "beyond the scope of a FAPE . . . in the school context." *Id.* at 902–904.

 Here, the Plaintiffs characterize the gravamen of their complaint as an intentional discrimination and negligence action. The court's review of Plaintiffs' complaint identifies few references to "magic words" or labels of a FAPE or IEP, with those few references providing preliminary and background information rather than facts supporting liability. In fact, while the parties recognize that Plaintiff Student is eligible for special education services, neither party references an IEP or states whether an IEP contains language regarding the restraint of

9

Plaintiff Student.² Moreover, the allegations in the complaint do not identify any disagreement between Plaintiffs and the District regarding Plaintiff Student's rights to a FAPE or his IEP that could be addressed in an administrative proceeding.

Furthermore, the substance of the complaint confirms that Plaintiffs could have brought the same claims if the incident occurred in a public library or movie theater. Plaintiffs provided a compelling example to illustrate this point:

> If this matter had occurred at a public theater wherein an employee usher physically assaulted a thirty-five-year-old adult with down syndrome, causing serious injury *and* the theater had actual notice of this usher's violent tendencies towards individuals with disabilities but did nothing to prevent or preclude that usher from working with individuals with disabilities, certainly this thirty-five-year-old would have an intentional discrimination claim.

(Doc. 6, p. 9.) The court agrees that this example satisfies the first hypothetical in the *Fry* framework. Similarly, if an adult with a qualifying disability under the ADA was restrained and put in a safe room at a school in the manner described by Plaintiffs, that individual would likely be entitled to sue the District based on the same theory of liability relied upon by Plaintiffs in this suit. This example satisfies the second *Fry* hypothetical. It is clear that the gravamen of Plaintiffs' complaint is not tied to Plaintiff Student's education plan, classroom discipline, or enforcement of special education policies. Thus, the allegations in this action do

---

² The court recognizes that certain allegations in Plaintiffs' complaint at paragraphs 62(f), (g), (i), and (j), as well as paragraph 5 of the relief requested, provide support for the District's argument. (*See* Doc. 1.) However, the court finds that these allegations are tangential to the core of Plaintiffs' allegations.

not concern a FAPE, and Plaintiffs are not required to exhaust their administrative remedies.

## CONCLUSION

Because the gravamen of Plaintiffs' complaint, specifically Count I for discrimination under the ADA and Section 504, concerns intentional discrimination, not a denial of a FAPE, the court will deny the District's motion to dismiss for lack of subject-matter jurisdiction. An appropriate order will issue.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: January 3, 2020